We'll move on to our second case of the morning, Appeal No. 25-1916, City of Chicago v. BP. Mr. Dick, when you're ready. Good morning, Your Honors. Joshua Dick on behalf of Appellants, may it please the Court. The Federal Officer Removal Statute is clear. It authorizes removal of any civil action for or relating to acts taken under federal officers. As this Court recognized in the Baker case, that broad standard means any civil action connected or associated with a defendant's federally directed work is removable. There is an unmistakable connection here between plaintiff's civil action and defendant's work by and for- Counsel, let's imagine that your clients were enjoined from the claimed tortious conduct, which is alleged false advertising. Would that injunction seriously affect the United States government's interests at all? Well, Your Honor, the United States does have a serious and enormous federal interest in an abundant, reliable supply of energy. And if you look at the removal statute- Could you answer that question? I'm sorry, can you repeat? I must have misunderstood. Could you please repeat the question? Imagine your clients were enjoined from specifically the allegedly tortious conduct here, which is the false advertising, alleged false advertising. Would that injunction of false advertising materially affect the United States government's  If the injunction was limited to just the alleged false advertising, I don't think it would directly affect a federal interest. Okay. Mr. Dick, your client is presently litigating a 1442A1 case before the United States Supreme Court. Is that right? That is correct, Your Honor. Would you prevail here under the test that you're proposing to the Supreme Court in Chevron against Plaquemines? Yes, we would, Your Honor. How so? The essential issue of Plaquemines relates to the related to prong of the test. Our position in Plaquemines, and I think it's the position that's consistent with this court's decision in Baker, is that the related to prong does not require that the activities be contractually mandated by the federal contracts. Instead, you look at the text of the statute and it says you have to look at the entire civil action. And here... Doesn't your brief in that case tell us to look at the challenged conduct? The brief does not... I don't believe our brief does say to look at the challenged conduct. The challenged conduct is not a statutory requirement. It doesn't appear anywhere in the statute. And if you look at some of the decisions, including Baker, I really do believe the challenged conduct is really just a shorthand for the civil action. That's why in Baker, for example, they do use the term the charged conduct. But when they go through the test, the actual test of what the statute requires, it's very clear that they say the statute was amended to encompass suits for relating to the test. That Congress... And this is at page 943. That Congress broadened the federal action, the federal officer removal to actions, not just those that are related to and connected to acts in the federal office. And in Baker, it goes on to say quite clearly that the statute does not require that the lawsuit must be for the very acts that were done under the federal officers, and that the complaint of conduct does not need to be at the behest of the federal officers. So you look at the entire civil action as a whole, and here, the production sale is clearly... I'm not sure the so follows there, but okay. Could you counsel explain for us how you think we should write an opinion about what has to relate to what and in what ways? Sure. I would say that the acts, that the lawsuit has to relate to the acts that were done under federal officers. That just restates the language of the statute. Look, in the Plaquemines Parish argument, there was a lot of debate about the limits of relating to in different federal statutes. I think they were talking about ERISA, they were talking about airline deregulation, et cetera, where you have very broad preemption provisions. In this context, can you just help give us some guidance other than you think you want to win? Well, I would say here, it really is not a close case. I understand... Okay. Let me try again then. For example, when we talk about relationships in a lot of contexts in the law, one of the things we worry about is temporal relationships. It's hard to see a temporal relationship between the alleged tortious activity here in the 1980s and going forward, and your clients' work during World War II and the Korean War. I would say two things with that respect, Your Honor. Number one, the conduct undertaken under federal officers, even if you look post-1980, was substantial. The defendants here produced highly specialized fuels for the government that were under detailed specifications that had no commercial use, and indeed, in the amicus brief that we included in our notice of removal submitted by the two former chairmen of the Joint Chiefs of Staff, they just provide as one example. In 2019, the Department of Defense purchased over 94 million barrels of military spec fuels that cost a total of over $12 billion. The federal contracts at issue in the Baker case, present-day value, were $12 million. Here we're talking about $12 billion in one year alone, but moreover, putting that aside in the temporal scope, I don't think it would be fair or correct to look at things that just happened in the 1980s, because here, plaintiff's central theory, their central theory of causation is that they've been injured by global climate change caused by the cumulative, indivisible greenhouse gas emissions that have been produced in the, going back to the start of World War II. They allege in their complaint that there's been a significant increase since World War II. And those, the act- Actually, I read the complaint differently. There's charts and stuff that show market increase in more recent decades, not temporally consistent with World War II. That's not what I saw. Well, I mean, I think they do have a chart that shows it escalates, kind of at a- Right, which they allege was caused by false advertising and the increased consumption from that false advertising campaign. I think that's exactly right, Judge Malano. And that hits the point, is that their theory is that, yes, it does start with, we'll admit, that does start with false advertising and market. But they allege that that led to increased demand, increased consumption, and the intended production and sale of those fossil fuels. So this production and sale is a central, essential component of their causal theory. And it's undisputable that a lot, a substantial part of that production- Let me ask you this. Let me ask you this. There's also the disclaimer, right?  I could see a damages model that focuses on increased sales and some kind of relationship with emissions, cutting out government, production for the government. In your opinion, does that situation require removal? Or, I mean, isn't there a damages model that can account for this? Even if there was a damages model that could account for this, I'm not saying there is, but even assuming it, the plaintiff's theory under that damages model is that they would somehow ask a fact finder to look at the emissions and figure out which of those- They're going to be looking at the sales, right? The sales. The sales that led to the emissions. I mean, the emissions are the direct last link in their causal chain. So either the sales or the emissions are a combination of the two. They would have to have a fact finder look at the sales and emissions and say, okay, what came from federal sources and what came from non-federal sources? And that act of apportionment between federal activity and non-federal activity is directly foreclosed under this court's precedence in Baker and 3M. I mean, that was a key aspect of the 3M decision recently in this court, is that the fact finder would not have to apportion the injuries, the activities from federal sources and non-federal sources. Here, that apportionment would have to happen. There's only one source of the emissions. It's the global atmosphere that become, as the Supreme Court recognized in the Second Circuit, well-mixed. So that very act of apportionment, under Planoff's theory, makes the disclaimer invalid. And that really wasn't true.  So let me go back to your math. You said the military bought $12 billion worth of products. Was that an annual figure? That was in one year in 2019. Just military specialized fuels. Okay. Military specialized fuels. And then what's the denominator or the fraction? $12 billion on top, and I would think defendants' total sales for that year in the bottom. I don't have that figure in front of me. It's pretty big. It's big, yes. It's big. And I would say two things in response to that, Your Honor. If you look at the Baker decision, you know, all that is really required is that some of the pollution, some of the contamination, some of the emissions come from the global sources. There's no significant, substantial, or de minimis requirement. The court reserved the question of the de minimis issue, but I would also say that that act of having to Under your theory, if a company has basically ever produced fossil fuels as a contractor for the federal government, then is any lawsuit based on pollution from future fossil fuel production essentially always removable to federal court under 1442A1? Your Honor, there could be a case where it's one defendant has extremely small amount of fossil fuel sales. Maybe that would be one place where you'd want to draw a line. But, I mean, here you're talking about several defendants, substantial operations, who have produced these fuels for many decades. So is that basically a yes with a potential de minimis exception? Again, the Seventh Circuit doesn't currently have a de minimis section. It reserved the question for Baker. In Baker, it's something the court definitely could reconsider. But here I would say, I respectfully submit, that if you look at our plausible allegations in the complaint, that's all that's necessary. The evidence we've submitted, we far exceed any de minimis requirement. I would also point just to the operations on the outcome. Yeah, I'm just asking about the logic of your argument. I understand that we haven't articulated a de minimis exception. So the logic of your argument, then, is yes. Essentially, if any company has produced fossil fuels as a federal contractor, then any lawsuits alleging pollution from fossil fuel production thereafter are removable to federal court, with a potential exception for someone who's just a de minimis federal contractor. I think that's great. If the plaintiffs are suing for injuries caused by emissions, and some of the activities that the defendant had done caused those emissions under federal activities, potentially they would be removable. So the Third Circuit had its 1 in 800, right, ratio in the Hoboken case? I believe that was correct. That the U.S. military was using up 1 800th of fossil fuels in the world. I believe that's correct. It's still a substantial part. I would also point just really quickly, another activity, and then I'd like to reserve my time, was our operations on the Outer Continental Shelf, which we basically produced and extracted oil for the federal government under close supervision. The domestic supply of production on the Outer Continental Shelf was about 30%, which seems to be very significant. If there's no more questions for now, I'll reserve the rest of my time, Your Honors. Thank you, Mr. Dick. Mr. Frankel. Good morning, Your Honors. May it please the Court, David Frankel on behalf of the City of Chicago. In line with the unanimous holding of eight circuit courts to address similar removal arguments by similar defendants in similar cases, this Court should affirm that this action belongs in state court. Defendants can't meet three of the four federal officer removal prongs, and the failure to meet any is fatal to their claims. Mr. Frankel, let's say you get to trial. How are you going to prove at trial that false advertising caused global warming? What are the steps going to be in between the sort of tortious conduct and the damages? Sure. So I think this question gets at a way that defendants really mischaracterize our claims and the injury for which we're seeking relief in this case. So we're seeking relief for climate injuries caused by defendants' deception, and proving our case will entail identifying the delta between the harms that would have existed anyway in a counterfactual world without that deception and the harms that exist today because of that deception. And this is a familiar inquiry, and so I direct the Court to, for example, the antitrust context, where a court would evaluate, for example, the real-world prices with collusion or with anti-competitive behavior against the situation that would have existed in a counterfactual world without that behavior. Things like expert testimony about consumer behavior will factor in as it will here. I mean, I think we plan to introduce multiple lines of evidence to make that causation question and to meet our burden on that. So the question will be limited to how much more pollution was caused by the false advertising rather than how much pollution is caused by fossil fuel production and sale nationally. That's right. We are not seeking remedies for climate change writ large. Our claims in this case, the charged conduct in this case, is laser-focused on defendants' deception, and we can only get injuries to the extent that we can prove that our injuries are attributable to that deception. Did defendants' deception increase the consumption of fossil fuels by the United States government at all? There's certainly nothing in exhibits in the record to suggest that. That's not an allegation that we've seen in the notice of remand. The defendants' deception is market-facing consumer conduct, and it's really unrelated to any of the federal acts under authority. In some sense, in raising these different acts under federal authority, their argument is sort of the reverse. It's that the federal government was dictating to defendants the things they needed to do, and we think there are reasons why that's wrong, why that doesn't rise to the level of federal acting under relationship. But in any event, there's nothing in the case to suggest that this deception went that way. I would back out for a second here. I think there's two major problems. I think there's two just conceptual problems with what defendants are doing. There's some subsidiary problems, too. But there's just a fundamental mismatch between the city's deception-based claims, which are all focused on the violation of state law obligations to market products truthfully and with adequate warnings, and the purported acts taken by defendants under federal authority, all of which involve fossil fuel extraction, production, and supply to the military. Relatedly, defendants can't establish a colorable federal defense when none of their arguably colorable defenses arise from their federal duties. And for both these nexus prong and the defense prong, I think defendants are really attempting a similar maneuver here, is that they would rewrite longstanding precedent that requires connections between the charge conduct and the federal acts and between the federal acts and the colorable defense that defendants essentially concede are absent here. And really what that would do is it would untether the statute from its essential purpose of protecting federal operations once you remove the requirement that you have those connections. We also think defendants' arguments fell for the third basis because they haven't identified any conduct rising to the type of special relationship that gives rise to acting under status. You know, Judge Tableson, you had asked earlier, would there be any impact on federal operations to hold defendants to account? I think that's really a critical question here. And the answer is no. I mean, I heard a concession that there would be no impact on federal operations. And this is the essential purpose of the statute. Whatever work the nexus prong is trying to do and hold a relationship between the acts and the charge conduct, it is that. And this case is a great example of how they would distort the statute in a way that would sever that really key relationship. I mean, just to go into detail on the nexus requirement a bit. I mean, their entire argument is that we should ignore decades of precedent from the Supreme Court and this court that looks at charged conduct and instead look at the civil action as a whole and other things that are not charged conduct. And, you know, there's a line of precedent. Willingham, Acker, Watson from the Supreme Court. Well, a lot of that precedent has been obviated by the 2011 amendment, right, that added relate to, which is much broader than the previous language that just said for. So it is certainly broader in that it loosens a strict causal nexus test to a looser relationship test. But it really was a narrowly tailored, a surgical amendment that focused on those linking words and doesn't change the phrases before them or after them that have been subject to longstanding judicial precedent, but what they mean. I mean, if Congress had meant not just to change the strength of the relationship, but to go further and actually change the things related to each other, it certainly would have taken a different tact than it did here. I mean, I point the court to the Baker decision as well, which talks about this. I mean, Baker talks about the very limited nature of the change, that it was designed really to harmonize the way courts have interpreted the statute for decades, that it wasn't reworking in the way that defendants suggest, really fundamentally reworking what the statute was doing. And Baker actually expressly aligned itself with and adopted the reasoning of three other circuits, and all of those opinions the court aligned itself with, in those specific opinions, those courts are all expressly looking at charge conduct too. So I think this court understood the limited nature of what the amendment was doing. Could you address the Black Mines Parish case, and frankly, whether we ought to wait to see what the Supreme Court does? Yeah, so I think there is no reason to wait on the Supreme Court from our perspective. I mean, it's this court's prerogative to do so, but I don't think there's any compelling reason to. I think the court will clarify the strength of the nexus test in all likelihood, but I think not in a way that would change any of our arguments for why defendants can't prevail on the nexus prong or on the defense prong. I think, actually, I read all sides in that case. I read every side to agree that the focus is on the charge conduct. You know, and the parties propose different tests in their briefing and at argument, and I think we win under all those tests because all those tests look at the charge conduct. I mean, one of the tests is that was offered whether there would be any impact on federal operations to hold defendants to account, and in this one, there's just no conceivable impact on federal operations to require defendants to market their products truthfully and with adequate warnings. Mr. Frankel, to the extent if we agree with you and give any weight to the disclaimer that you all have put forth, do you see any possible risk that as you litigate forward in the state courts, you wind up undermining or contradicting your disclaimer so we wind up with another removal? No, there is no risk here. I mean, first and foremost, I would say that our disclaimer is, in a large sense, redundant. I mean, I think it confirms and clarifies our theory of the case that our case is limited to deception, that the city is only seeking relief from climate harm is limited to deception, and because none of the federal acts in this case have any relationship at all with defendant's marketing or deception, there's no risk. But the disclaimer has a binding effect, too. I mean, I think above and beyond that, the disclaimer ensures that we can't change our theory of liability or back out of things down the road in a way that would pose any risk of that, so it has that binding effect as well. I have a quick question about the federal defense part. Just to clarify your argument, do you agree that if there is a government contractor defense here, that does arise out of federal duties and is cognizable as a federal defense that could sustain removal? We do agree that of all their defenses, the government contractor defense is the one that would arise out of federal duties. I mean, the problem with that defense is it's just not a defense to these claims. It's not colorable on these facts because the essence of the government contractor defense is an assertion that the government made me do it. And again, our claims, which are laser-focused and deceptive marketing, there is nothing across 1,300-plus pages of exhibits suggesting the government had any involvement at all with the tortious marketing that's at the heart of this suit. The scope of the defense is really bounded by the extent of federal direction, and there's no federal direction here. And I think notably, if you look through all the papers defendants have filed in this case, even with the district court, they never lay out the elements of the defense and explain why they'd meet them because they can't. It's the theory. So all of the theory is in the other bucket, and so putting that to the side, there's a lot of other defenses that, first, we think are forfeited for the reasons we pushed in our brief. But even if they're not forfeited, none of those federal defenses arise out of the federal duty. And that is a requirement. Again, this is just doing the same thing as they did with Nexus, an attempt to rewrite longstanding Supreme Court case law. A trio of Supreme Court cases, Willingham, Mesa, Menny, Penny, have all articulated the proposition that the statute provides a federal forum for federal officials to raise defenses arising from their official duties. And these defenses, a lot of these defenses, I mean, the First Amendment, for example, is an entirely personal defense about the right to be free from government conduct. The idea that that arises from federal duty. The statute itself doesn't actually require a federal defense, right? I mean, that's just implied from the sort of jurisdictional requirements in the Constitution to make sure that the federal courts have jurisdiction? So I think Mesa is to the contrary on this point. So I read the Supreme Court's decision in Mesa as founding that requirement in the statutory phrase, under color of office, which codifies a preexisting federal defense requirement. And so given that under color of federal office is the statutory hook here, just that language evinces that the duties must arise from the federal office. You know, defendants make a similar argument that the 2011 amendment changed this, but there's no merit to that as discussed. The statute really reflected a modest change. It didn't reflect, it didn't change any of the language in the statute that talks about it, the under color of office phrase. And multiple other circuits have affirmed this requirement. The only contrary case defendants cite is the Third Circuit's Commonwealth Motion case, but that doesn't undercut the requirement that a defense needs to arise out of the federal duty. It just says it doesn't need to coincide with or form the federal duty, and that's something different entirely. There are lots of defenses that can arise from the federal office, arise from the relationship, but nonetheless not be the exact duty that you had to do. I think Acker is sort of a good example of this, where intergovernmental tax immunity arose from defendant status as federal judges, but their duties as judges didn't require that they resist the tax. I have a couple minutes left. I'll just turn quickly to the acting on their prong, where we think defendants' arguments also fail. At the outset, a lot of the conduct is simply irrelevant because it occurred before the relevant time frame here. That includes the World War II and Korean War conduct. That includes the coordination at Elk Hills. That includes almost all of their specialized fuel supply arguments, except for the DLA contracts, which are a little more recent. When did Elk Hills close? Their involvement with Elk Hills closed in 1975. And beyond that, none of the conduct involves the type of special relationships rather than arms-length business transactions and cooperative conduct that courts have found to create acting under relationships. I'm happy to answer any of the court's questions about those conduct or about anything else. I think we're done. Thank you, Mr. Franco. Mr. Dick? Thank you, Your Honor. Just a few points. My friends on the other side accuse us of ignoring decades of precedent that say you look to the charged conduct. I don't think that's accurate. I don't think the precedent stands for that. In fact, I think it's my friends on the other side who are ignoring the plain text of the statute and this court's decision in Baker that say you look to the entire civil action. They, again, kind of focus on one aspect of their claim, the deception, the allegedly false advertising, but really they're asking this court to ignore their causal theory, their injuries, their damages, really to ignoring wide swaths of their whole complaint, which include the production, sale of fossil fuels, which increased emissions, which led to their alleged harms. I think my friends on the other side did admit in response to some of the questions that in order to succeed on their claims, if they were going to have this disclaimer, that they would need to apportion damages from federal and non-federal sources, federal and non-federal activities, that type of apportionment is a merits question that this court should decide, that the federal court should decide. That's what Baker and I believe 3M as well squarely held. With respect to the defenses, I think Judge Tableson, you're exactly right. That requirement's not in the statute. The colorable federal defense is meant to get around the well-pleaded complaint rule and help provide Article III jurisdiction. Can you try to remove later, again, if what you predict will happen actually does happen? It's a good question. The standards for re-removal requires, it's a somewhat odd term, a new paper, so whether or not this could be, if they change their theory, that's a new fact. I think we would probably argue that it would provide a basis for re-removal, but I think that's unclear. I'm not, at least sitting here today, kind of aware of case law that goes one way or the other. In situations, that would be similar. What do you think your best colorable defense is? I would say two, the federal contractor defense. I would also say that these claims are preempted and precluded under federal law. How is a federal contractor defense applicable to their theory of deception and fraud? Again, I think their theory is that deception and fraud led to an increase in sales. A lot of those sales were done for the government under very detailed specifications. So, only that kind of double bank shot. I'm sorry, say that again. Only a kind of double bank shot to apply to as a defense to fraud and deception. I think that's right. Again, that is their causal theory. That is their causal chain, but I'd also say, again, another colorable defense is that these claims, these state law claims are preempted and precluded by our constitutional structure and the Clean Air Act. If you look at footnote one of the Baker decision, unlike my colleagues, my friends on the other side suggested, the defense does not need to arise from a specific act. You could have preemption defenses. Okay, thank you, Mr. Dick. The case is taken under advisement.